```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

Stacy Cass,                    )
                               )
          Plaintiff,           ) Case No. 1:05-CV-567
                               )
     vs.                       )
                               )
UNUM Life Insurance Company    )
of America,                    )
                               )
          Defendant.           )

O R D E R

This matter is before the Court on cross-motions for judgment on the administrative record filed by Plaintiff Stacy Cass (Doc. No. 28) and UNUM Life Insurance Company of America (Doc. No. 30).  For the reasons that follow, Plaintiff's motion for judgment on the administrative record is well-taken and is **GRANTED**; Defendant's motion is not well-taken and is **DENIED.**

I. Procedural Summary

Plaintiff Stacy Cass presents a claim against Defendant UNUM Life Insurance Company of America ("UNUM") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to review the plan administrator's decision denying her claim for long-term disability benefits.  Plaintiff contends that the plan administrator's determination that she is not disabled under the "any occupation" provision of the plan was arbitrary and capricious because the fact that she has transferrable skills from her previous occupation as a

respiratory therapist does not mean that she can perform the material duties of the occupations identified by UNUM's vocational expert.

Perhaps unusually for a disability benefits case, the medical facts in this case are straightforward. Plaintiff was employed by Christ Hospital in Cincinnati as a respiratory therapist. She was also a participant in a long term disabilities benefit plan sponsored by Christ Hospital. UNUM is the plan administrator.

In 1996, Plaintiff was injured in a head-on automobile crash. Specifically, Plaintiff injured her hip and right ankle. In 1998, Plaintiff underwent a right ankle fusion by her orthopaedist. As a result of the surgery, Plaintiff was no longer able to climb or stoop and she could only walk or stand for short periods. UNUM agreed with Plaintiff that, as a result of her injuries and limitations, she was completely disabled from performing her occupation as a respiratory therapist. Consequently, Plaintiff received 60 months of plan benefits under the "own occupation" provisions of the plan.[1]

However, according to the plan, after payment of benefits for 60 months, a participant is "disabled" only if "the insured cannot perform each of the material duties of any gainful

---

[1] This provision pays benefits if the participant "cannot perform each of the material duties of his regular occupation[.]" AR 127.

occupation for which he is reasonably fitted by training, education or experience." Id. (hereinafter referred to as "the any occupation clause"). In 2001, UNUM submitted Plaintiff's file to its own rehabilitation coordinator, Daniel Bruce Hoffman, to perform a transferrable skills analysis to determine whether Plaintiff is disabled under the "any occupation" clause.

In his report, dated August 14, 2001, Hoffman reviewed Plaintiff's medical status, education, and work history. Specifically, Hoffman noted that Plaintiff is able to perform full-time sedentary work, but that she cannot stand or walk for more than 10 minutes per hour, nor can she climb or crawl. Hoffman further noted that Plaintiff is a high school graduate, has an associate degree in respiratory therapy, and, as of the date of the report, had competed one year toward a bachelor's degree in education. Finally, Hoffman noted that Plaintiff had worked as a respiratory therapist since 1987. AR 165. Based on the summary of Plaintiff's work experience and education, Hoffman concluded that Plaintiff has the following transferrable skills:

1. performing a variety of duties;

2. attaining precise set limits, tolerances, and standards;

3. working under specific instructions;

4. comparing, compiling, computing, and copying data;

5. dealing with people;

6. speaking, signaling, helping, giving & taking instructions, and serving people;

7. making judgments and decisions;

8. directing, controlling, or planning activities.  Id.  With these transferrable skills, and taking into consideration Plaintiff's physical limitations, Hoffman concluded that "[h]er work history and educational levels would support re-employment" with the following occupations:

1. hospital admitting clerk;

2. surveillance system monitor;

3. blood bank clerk;

4. insurance claim examiner/adjuster;

5. emergency services dispatcher;

6. volunteer services coordinator.  AR 166.

In a letter dated August 24, 2001, UNUM notified Plaintiff that it was going to stop paying benefits under the "any occupation" clause as of January 16, 2002.  AR 160-61.  In doing so, UNUM stated that it agreed with the medical restrictions identified by Plaintiff's physician.  Id. at 160. UNUM went on to state, however:

> Vocationally, your file was reviewed by our Vocational Consultant.  Based on your training, education and experience, it was determined you are able to engage in the following activities:
>
> 1. Insurance Claim Examiner/Adjuster - $15.69 per hour
> 2. Volunteer Services Coordinator - $16.77 per hour
>
> The alternative occupations are within your physical capacity and would utilize the skills you have gained from your past work experience.

>Since you no longer meet the above definition of disability, based on the current documentation in our file, we must deny further liability on your claim beyond January 16, 2002.

AR 161.

On November 24, 2001, in response to the initial decision terminating her benefits, Plaintiff submitted to UNUM the report of her vocational expert, Dr. David Roebker, which set forth his opinion why Plaintiff is not qualified to perform the alternative occupations identified by UNUM's vocational expert. AR 164.  Dr. Roebker agreed that Plaintiff would be able to perform sedentary work.  Nevertheless, he explained in some detail why the occupations identified by UNUM were not suitable for Plaintiff:

>In my interview of her on 11/07/01, she reported that she has worked as a respiratory therapist since 1979. Her educational history is limited to her associate degree in respiratory therapy and does not contain additional course work in administrative/business/ social type courses.  Thus her work history and educational background is very limited and restricted to functioning only in the medical service area as a respiratory therapist.
>
>According to the Dictionary of Occupational Titles, respiratory therapist (DOT #076.361-014) is within the medical service area.  The respiratory therapist administers respiratory therapy and life support to patients with abnormalities of [sic] cardiopulmonary system under supervision of a physician.  The respiratory therapist administers treatment such as setting up operation devices for inhalation, ventilators, humidity, gas concentrations, and so forth.  They monitor patient's [sic] response to therapy via reading blood chemistry changes and other methods.  They assist in instructing the patient so as to perform breathing exercises and help with drainage.

They maintain the patient's chart with pertinent information regarding respiratory therapy information. They may inspect the equipment to assure safety. The strength capacity requirement is rated as medium. The GOE:10.02.02, GED:R4N3L3, SVP:6, DLU:88. Thus respiratory therapist basically takes one to two years to learn how to function in this occupational area with this being the specific level of vocational preparation, but also is within the area of medical service as noted. The Data, People, Things involves compiling, speaking, signaling, and precise work.

In reading records I see that two occupations have been suggested as being reasonable and in keeping with her training, education, and experience. The positions are insurance claim examiner/adjuster and volunteer services coordinator.

The insurance claim examiner/adjuster DOT code is - 241.267-018. This occupation is within the business/insurance area. It requires analyzing insurance claims to determine the extent of insurance carriers liabilities and settles claims with claimants in accordance with policy provisions. It compares data on claim application, death certificate, or physician's statement with policy file and other company records to ascertain completeness and validity of claims. Corresponds with agents and claimants or interviews them in person to correct errors or omissions on claim forms and to investigate questionable entries. The COE:11.12.01, strength requirement is sedentary. GED:R4M3L4 and SVP:7, DLU:77. This occupation in my opinion is not appropriate or suitable for Ms. Cass. It is first of all within a very different occupational area being a business service/insurance as opposed to medical service. She has no educational instruction in this regard nor any work experience. It has SVP=7, which indicates the individual should have at least two to four years training, education, or experience in his vocational area which she does not have. It also has a somewhat higher level of language development necessary compared to respiratory therapist. The DPT includes analyzing, speaking/signaling, and handling.

The other occupation as [sic] coordinator, volunteer services, DOT #187.167-022. This is within an area designated as social service and not medical service. In this area, the individual coordinates student and

>community volunteer services program organizations engaged in public, social and welfare activities. It involves interviewing, screening, and referring applicants to appropriate units. It orients and trains volunteers prior to assignment in specific units. It involves speaking to community groups explaining organization activities in the role of volunteer programs also publishing agency newsletters and maintaining personnel records. The GOE:11.07.01 with strength capacity being sedentary, GED:R5M3L5, SVP:7, DLU:77. This also in my opinion is inappropriate given Ms. Cass's background and qualifications. It is within a different area. It has a higher level of general educational development necessary with regard to reasoning development and language development. It also involves coordinating and more functioning with regard to social skills than she has experience with in the past. The specific vocational preparation is 7 and this suggest [sic] the individual would have two to four years of specific educational preparation in order to function within that occupation with this being something she clearly does not have.
>
>Thus, in conclusion in view of both vocational indicators of appropriateness for alternative occupations as well as using common sense and good judgment these occupations presented would not be appropriate for her.
>
>She does not appear to be qualified, at this point in time to assume an occupation within the hourly earnings range she was making as a respiratory therapist.

AR 77-79.

UNUM submitted Dr. Roebker's report to Hoffman for review, but he was not persuaded to change his opinion that the occupations he identified were suitable for Plaintiff. On November 27, 2001, in response to Dr. Roebker's opinion, Hoffman wrote:

>It is Dr. Roebker's opinion Ms. Cass does not have transferrable skills to secure re-employment as an Insurance Claims Examiner/Adjuster and/or Volunteer

7

Services Coordinator.  Based on my review, the issues appear to be: 1) Ms. Cass' own occupation is in a different occupational area than the occupations identified, therefore excluding her possibility of re-employment within these occupations; 2) Ms. Cass' work experience has provided an inappropriate background & qualifications for re-employment within these occupations; and 3) Ms. Cass does not have the educational instruction or specific vocational preparation level to secure employment within the identified occupations.

Reviewer's Response:

Skills that are necessary to master occupational tasks successfully in one occupational industry are not exclusive to that occupational industry.  Many skills do appropriately cross over to other occupational industries.  There are many skills learned in one occupation that are viable skills in another occupation.  In the case of Ms. Cass, her work as a Respiratory Therapist would have provided Ms. Cass with the skills that are common work related skills of an Insurance Claim Examiner/Adjuster and/or Volunteer Services Coordinator such as: performing a variety of duties; attaining precise set limits, tolerances, and standards; working under specific instructions; comparing, compiling, computing, and copying data; dealing directly with people either by speaking, signaling, helping, giving & taking instructions, and serving people, as well as directing, controlling, or planning the activities of others.  It is the purpose of a TSA to identify these common skills to develop appropriate job goals.  It is widely accepted by the vocational rehabilitation profession that when assisting a disabled individual back to commensurate employment close attention is paid to these skills that can cross over to other types of employment options, many of these alternative options would appear in unrelated occupational industries.

I would further support my position by indicating that the occupation of Insurance Claims Examiner/Adjuster do [sic] appear in directly related business occupational industries similar to Ms. Cass' own medical service industry such as insurance companies dealing with Short and Long Term Disability, Workers' Compensation, and Auto no-fault.  These employers would have the need for

individuals with medical service backgrounds to make appropriate claims decisions.  I am also of the opinion that the occupation of Volunteer Services Coordinator is found in many industries other that [sic] the social services industry, such as in hospitals, schools, libraries, churches, medical foundations and research organizations.  Ms. Cass worked in an atmosphere where it is reasonable she had an awareness of and utilized the help of hospital volunteer programs.

Ms. Cass' work history and life experiences has [sic] provided her with a familiarity to be successful in the occupational duties of an Insurance Claims Examiner/Adjuster and/or Volunteer Services Coordinator.  In the case of an Insurance Claims Examiner/Adjuster a high school education is sufficient to qualify for most positions, higher education is preferred; however, many people qualify for these positions on the strength of related prior work experiences.  No specific college major is recommended as the best preparation for this occupation and post-secondary studies in almost any field is adequate.  Entry-level positions may be hired without college coursework [sic] if they have a specialized work experience.  For example, an individual with knowledge of respiratory disease could qualify as a disability claims adjuster in an insurance company dealing with medical claims of a general medical nature to include respiratory dysfunction.  The true skills for this position is [sic] for an individual to be observant and enjoy working with details, communicate effectively with others, be analytical, and have general math skills.  Many insurance companies provide on-the-job training and or home study courses for entry level examiner and adjuster positions.  As the occupation of Volunteer Services Coordinator does exist in many different employment arenas, it would not be unreasonable for an individual such as Ms. Cass having knowledge of hospital volunteer workers; whose own occupation involved working and dealing with people; and who has planning & coordination skills would be a successful candidate for employment in this type of position.  In many cases indirect work experiences and familiarity of an occupation may be substituted for actual work experience.

At this time, Ms. Cass' educational instruction level includes an associate's degree in Respiratory Therapy

9

>and a minimum of one year completed toward a BA in education.  Ms. Cass is presently studying to become a schoolteacher [sic].  In my opinion, Ms. Cass' educational attainment indicates she has proven college level reasoning, math, and language skills.  This would therefore indicate she has the General Educational Development basics to support re-entry into the employment market with the positions identified in this report, as college level GED skills is [sic] what is identified as necessary to be successful in completing activities surrounding the reasoning, math, and language tasks of the occupations discussed in this report.  Given the knowledge that Ms. Cass has complete [sic] additional college training, it is my opinion she would qualify for positions indicating possible SVP levels of 7.  It must be noted, SVP levels are only a guideline for determining the amount of time needed to learn the techniques, acquire the information, and develop the facility for average performance in a specific job-worker situation.  The specific vocational preparation comes from many including but not necessarily limited to; vocational education; civilian, military, and institutional work experience; apprenticeships; and from in-plant or on-the-job training.
>
>Reviewer's Conclusion
>
>The information in Dr. Roebker's report does not change my prior opinion as to Ms. Cass's appropriateness for re-employment in the alternative occupations identified in the 08/14/01 TSA completed by me.

AR 73-74.  In light of this review, UNUM affirmed its conclusion that Plaintiff is not disabled under the terms of the plan because she has "the ability to perform" the occupations identified in Hoffman's original report.  AR 71-72.  On June 10, 2002, UNUM sent a letter advising Plaintiff's attorney that it had completed its review of Plaintiff's claim for long-term disability benefits and concluded that Plaintiff is not disabled because the "alternative occupations [identified by Hoffman] are

with Ms. Cass' physical capacity and would utilize the skills she has gained from her past work experience and education[.]" AR 37.

Plaintiff filed an administrative appeal from UNUM's determination that she is not disabled within the meaning of the plan. In support of her appeal, Plaintiff submitted a supplemental report from Dr. Roebker in which he disputed Hoffman's transferrable skills analysis. According to Dr. Roebker, although he agreed that some skills are transferrable from one field to another, when performing a transferrable skills analysis one typically stays within the same field or one that is closely related. AR 16. The alternative jobs identified by UNUM, Dr. Roebker noted, are in different work fields from respiratory therapist. Using the Classification of Jobs 2000 and O*Net, Dr. Roebker concluded that jobs that are within the same field and/or are occupations related to respiratory therapist include physical therapist, optometrist, dental hygienist, physician's assistant, surgical technologist and orthodontist. AR 17. Dr. Roebker opined that it would take Plaintiff at least two to three years of additional education to perform the jobs identified by UNUM. Id.

On August 30, 2002, however, UNUM denied Plaintiff's appeal based on Hoffman's assessment that she has the transferrable skills to perform the Insurance Claim Adjuster/Examiner position and the Volunteer Services Coordinator

11

position.  AR 7-8.  This was UNUM's final determination and concluded the plan's administrative process.

On August 29, 2005, Plaintiff filed a complaint for review of the plan administrator's decision pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).[2]  Doc. No. 1.  On January 4, 2006, on joint motion of the parties, the Court administratively closed the case for a period while Plaintiff's claim underwent a second review by UNUM pursuant to a regulatory settlement agreement between UNUM and the Department of Labor.  Doc. No. 10.  The case was reopened on June 20, 2007 after UNUM again denied Plaintiff's claim.  Doc. Nos. 12 & 13.  The parties then filed cross-motions for judgment on the administrative record (Doc. Nos. 28 & 30).

III. <u>Standard of Review of Plan Administrator's Decision</u>

Plaintiff filed suit pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), to review the plan administrator's decision denying her claim for long-term disability benefits.  The parties agree that the Plan document gives the plan administrator complete discretion to make determinations concerning eligibility for plan benefits.  Doc. No. 28, at 9-10; Doc. No. 30, at 2.  Accordingly, the arbitrary and capricious standard review applies

---

[2]  The complaint also asserts against UNUM federal claims for breach of fiduciary duty pursuant to 29 U.S.C. § 1104(a)(1) and breach of ERISA regulations, and a state law claim for breach of the duty to process Plaintiff's insurance claim in good faith.  These claims apparently are no longer in issue since neither party discusses them in their brief.

12

to this Court's review of the plan administrator's decision denying Plaintiff's claim.  <u>Yeager v. Reliance Std. Life Ins. Co.</u>, 88 F.3d 376, 380 (6th Cir. 1996).

Recently, the Sixth Circuit described at length the parameters of the arbitrary and capricious standard of review:

> This standard is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.  Consequently, a decision will be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.  The ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious.
>
> While the arbitrary and capricious standard is deferential, it is not, however, without some teeth.  Merely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions.  The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.
>
> We have recognized that a conflict of interest exists when the insurer both decides whether the employee is eligible for benefits and pays those benefits. In this case, because defendant maintains such a dual role, the potential for self-interested decision-making is evident.  However, this conflict of interest does not displace the arbitrary and capricious standard of review; rather, it is a factor that we consider when determining whether the administrator's decision to deny benefits was arbitrary and capricious.  The reviewing court looks to see if there is evidence that

>        the conflict in any way influenced the plan
>        administrator's decision.
>
>        Finally, absent a procedural challenge to the plan
>        administrator's decision, this Court's review is
>        limited to the administrative record of the benefit
>        determination.

Evans v. UnumProvident Corp., 434 F.3d 866, 875 (6th Cir. 2006) (internal citations, quotation marks, and brackets omitted).

## IV. Analysis

Plaintiff argues that the plan administrator's decision denying her claim for long term disability benefits was arbitrary and capricious because Hoffman's transferrable skills analysis did not address whether she is presently capable of performing other jobs for which she is reasonably fitted by training, education or experience. Plaintiff contends that Hoffman's report is not substantial evidence because the transferrable skills he identified are nothing more than general work traits which are applicable for any occupation or job. UNUM, on the other hand, rather conclusorily argues that the plan administrator's decision was not arbitrary and capricious because, based on the transferrable skills analysis, the jobs identified by Hoffman accommodated Plaintiff's physical restrictions. The Court agrees with Plaintiff that the plan administrator's decision was arbitrary and capricious because it was based on a report that employed an incorrect standard of review to assess whether she is disabled.

14

As indicated, under the plan's "any occupation" clause, a beneficiary is disabled after sixty months if he "cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience."  In denying Plaintiff's claim for continued disability benefits pursuant to this provision, UNUM relied exclusively on the transferrable skills analysis performed by its own rehabilitation coordinator, Daniel Bruce Hoffman.  While Hoffman gleaned some transferrable skills from Plaintiff's past education and work experience, albeit at a superficial level of applicability, nowhere in his initial report does Hoffman discuss, or even list, the material duties of the alternative occupations he identified.  Hoffman's supplemental report also fails to discuss the material duties of the jobs of Claims Adjuster/Examiner and Volunteer Services Coordinator.  Similarly, while UNUM's decisions recite the language of the "any occupation" clause, UNUM clearly denied Plaintiff's claim based on its determination that she has relevant transferrable skills. AR 7 ("Ms. Cass does possess transferrable skills to alternate gainful occupations within her level of restrictions[.]"); AR 37 ("Since these alternative occupations are within Ms. Cass' physical capacity and would utilize the skills she has gained from her past work experience and education, she no longer meets the definition of disability as of June 24, 2002."); AR 161 ("The

15

alternative occupations are within your physical capacity and would utilize the skills you have gained from your past work experience."). However, the plan's definition of disability pursuant to the "any occupation" clause is not dependent on the claimant's transferrable skills. Rather, the plan language of the clause states that whether a claimant is disabled depends on whether his training, education, and work experience enables him to perform each of the material duties of other gainful occupations. In denying the claim for the stated reasons, UNUM imposed on Plaintiff a different and more difficult burden to prove disability than was required by the plan. Consequently, the plan administrator's decision was arbitrary and capricious because it was not the product of a principled reasoning process, see supra, at 13, and because the standard it did employ contravened the plain language of the plan. Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 93 (2nd Cir. 2000)("[W]here the plan administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with the its plain words, its actions may well be found to be arbitrary and capricious.")(internal brackets and ellipses omitted).

      In contrast, Dr. Roebker's report was more thorough and lists some, but not all, of the material duties of Respiratory Therapist, Claims Adjuster/Examiner, and Volunteer Services

Coordinator and states why, in his opinion, Plaintiff's prior training, education, and experience does not translate into an ability to perform the occupations identified by Hoffman. Plaintiff, however, bears the burden of producing evidence which establishes that she is disabled under the terms of the plan. Morales-Alejandro v. Medical Card Sys., Inc., 486 F.3d 697, 700 (1st Cir. 2007). Plaintiff does not quite carry her burden on this record because Dr. Roebker's report fails to discuss each of the material duties of the alternative occupations identified by Hoffman. Therefore, Plaintiff has failed to adduce evidence that she is unable to perform each of the material duties of those occupations.

In summary, the plan administrator's decision denying Plaintiff's claim was arbitrary and capricious because UNUM imposed a standard of disability that was not required by the plan's provisions. On the other hand, Plaintiff's evidence fails to clearly establish that she is disabled under the "any occupation" clause because of the gaps in Dr. Roebker's report already noted. Under these circumstances, the Court concludes that the appropriate remedy is to remand this matter to the plan administrator with instructions to review whether Plaintiff is disabled pursuant to the "any occupation" clause according to the correct standard. See Elliott v. Metropolitan Life Ins. Co., 473 F.3d 613, 622 (6th Cir. 2006) (although plan's administrator's

17

decision was arbitrary and capricious, court remanded case for full and fair inquiry because record did not establish that plaintiff was clearly entitled to benefits).

Conclusion

Accordingly, for the reasons stated, Plaintiff's motion for judgment on the administrative record is well-taken and is **GRANTED**; Defendant's motion for judgment on the administrative record is not well-taken and is **DENIED**.  The decision of the plan administrator denying Plaintiff's claim for long-term disability benefits is **REVERSED.**  This case is **REMANDED** to the plan administrator with instructions to reconsider Plaintiff's claim pursuant to the standard established by the plan and in conformity with this order.

**IT IS SO ORDERED**

Date July 9, 2008                    s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Chief Judge
                                       United States District Court